UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-cv-23458-KMM

**DORELIA CAMPS PINERO,**

        Plaintiff,

vs.

**WALMART CLAIMS SERVICES, INC.,**

        Defendant.
_____/

**Plaintiff's Motion for Sanctions and to Strike Defendant's Liability Defenses, or, Alternatively, for Burden-Shifting Presumption and for Standard Jury Instructions 301.11(a) and 301.11(b)**

Comes now the Plaintiff, DORELIA CAMPS PINERO, by and through her undersigned counsel, and moves this Court for Sanctions and to strike Defendant's Liability Defenses, or, Alternatively, for a burden-shifting presumption and for Standard Jury Instruction 301.11B, and states as grounds as follows:

**INTRODUCTION**

This case arises from an incident on October 7, 2020 (a Wednesday) in which Plaintiff was injured when she slipped and fell on a dirty, slippery substance-- perhaps gasoline-- near a gas pump on Defendant's premises. Plaintiff testified that she arrived at the gas station at around 6:45AM. The accident happened a few minutes later, and Plaintiff left the station at approximately 7:00am (See Plaintiff's depo, Pg. 77, Lines 7-19; Pg. 88, Lines 8-15; and Pg. 102, Line 19—Pg. 102, Line 25). Before Plaintiff left, she was able to see that there was at least one worker present at the gas station, and testified that she reported the incident to an employee

1

by the name of Martha (See Plaintiff's depo, Pg. 95, Line 16—Pg. 97, Line 2). Plaintiff has been able to offer evidence that the gas station was open and attended at the time of the fall (See Plaintiff's Deposition, Pg. 77, Lines 7-19), and that the worker outside the store was a female, which is consistent with the affidavit of Rita Diaz, which was filed by Defendant. Defendant denies that Plaintiff reported the incident.

On October 20, 2020 (13 days after the fall), Plaintiff's attorneys, Rubenstein Law, sent a letter to Defendant, advising of the fall and requested that Defendant preserve the following:

> If you are in possession of any evidence, including photographs or any instrumentality that may have contributed to the above referenced loss, please preserve the same until we have an opportunity to inspect it. *If you have any surveillance video that depicts the accident that occurred at your premises on the above referenced date please preserve the video recording from all cameras, from one hour before through one hour after the incident. Failure to preserve evidence may lead to a spoliation claim against you.*"
> (See Preservation Letter, attached as Exhibit A; Emphasis added.).

On October 30, 2020, Debbie Pippin, a "case manager" wrote back to Plaintiff's attorneys, on behalf of the Defendant, Walmart Claims Services ("WCS"): "Walmart has received your correspondence requesting preservation of evidence for the above referenced customer and incident. Walmart has taken reasonable action to preserve information relevant to the above-referenced incident." (See Walmart Correspondence, dated Oct. 30, 2020, attached as Exhibit B).

It appeared that Walmart had begun to take steps to collect and preserve the video of the incident and other relevant information and evidence. Interestingly enough, Ms. Pippin's correspondence also included Walmart's own preservation notice and demand *to Plaintiff*, and warned the Plaintiff:

> **"Your failure to preserve any evidence may result in your responsibility for spoiling same. We reserve all rights to seek all legal remedies in the event you fail to comply with these requests."**
> (See Walmart Correspondence, Page 2, dated October 30, 2020)

Ms. Pippin sent additional correspondence on behalf of Walmart again on May 14, 2021, stating: "In assessing your client's claim, WCS has carefully reviewed the facts relating to the incident and the information you have provided to WCS. WCS's investigation and evaluation of this claim indicate that the storekeeper was not at fault for your client's injury. Therefore we must respectfully deny your client's claim for liability payment." (See Walmart Correspondence, dated May 14, 2021, attached as Exhibit C).

Plaintiff proceeded to file suit on August 12, 2021, and on October 19, 2021, propounded discovery requests to Defendant. Plaintiff's Request for Production #10 asked for "Any and all video footage of the premises on the date of accident from one hour prior to the time of this accident to one hour subsequent to the time of this accident". It wasn't until nearly six months later, on April 4, 2022, that Defendant responded to discovery. In response to Plaintiff's Request #10, Defendant responded simply, "See attached" (See Defendant's Response to Request for Production, attached as Exhibit D), and produced one video showing some of the gas pumps at the subject location. Incredibly, the video footage starts at 7:00:19AM, and ends at 9:04:30AM. The 2 hours of video footage produced by Defendant does not even show Plaintiff's fall, or Plaintiff at all, for that matter.

As Plaintiff testified in her deposition, her fall occurred shortly after she arrived at approximately 6:45AM, and she left the premises at around 7:00AM (See Plaintiff's Deposition, Pg. 102, Line 23 through Pg. 103, Line 5). Remarkably, in spite of Plaintiff's preservation letter sent 13 days after the accident, the critical video of the one hour before the incident is apparently

3

gone forever. It is not because Defendant did not have multiple cameras at the area where Plaintiff fell—they did. It is not because the cameras were not working at the time—they were. It is not because the video was lost—it was not. It is because Defendant unilaterally decided to not copy or preserve the video of the incident to include the total time Plaintiff was at the gas station, the time her vehicle arrived, the time and way she used the gas pump, the liquid on the ground, the time the employee arrived that morning, and the time the employee checked for cleanliness (as she claims to have done). The critical one hour pre-accident video, which the Defendant chose not to preserve, would have proven or disproven whether the spill occurred in that hour of missing tape, which would assist Plaintiff in proving her case.

Defendant now, for the first time (despite never properly answering Plaintiff's discovery), claims that it somehow was only able to manage to preserve two hours of video starting *after* Plaintiff left the premises. It stretches credulity to believe that Defendant, who was on notice of this incident from Plaintiff—or, at least, from Plaintiff's lawyers—somehow was unable to produce one minute of the entire incident before the Plaintiff left the property. This "fact" is placed in the record on #8 of Defendant's "Statement of Undisputed Material Facts: "Due to the delayed notice, the only store video that was able to be preserved commences at timestamp 7:00:09 AM." This "fact" is placed in the record by Defendant's attorney as an officer of the Court.

What the delay in reporting (if believed) has anything to do with only producing a video for two hours after the incident—but not one minute for the hour before—is, to put it lightly, unclear. In fact, it is nonsensical. This would be, in all likelihood, the first case in any Court in this state or any state where a Defendant was only able to capture and preserve accident scene video starting the minute Plaintiff left the premises.

4

It is clear from Walmart's October 30, 2020 correspondence that Defendant had understood the importance of preserving all relevant evidence, and agreed to do so. Walmart did not, in this correspondence to Plaintiff, say that it did not have a video of Plaintiff's fall. Instead, Walmart assured, in response to the preservation request, that it had taken "reasonable action to collect and preserve information relevant to" the incident. What's more, Walmart's May 14, 2021 denial letter to Plaintiff's attorney stated that Defendant "carefully reviewed" the facts. Defendant then denies the claim, pre-suit, and does not offer any evidence or video footage as requested in Plaintiff's preservation letter. Defendant now files a Motion for Summary Judgment, egregiously taking the position that Plaintiff cannot prove her case, after depriving Plaintiff of the critical video evidence it failed to preserve.

## MEMORANDUM

Florida law requires a party to preserve evidence when there is merely a "reasonable anticipation of litigation." *League of Women Voters of Fla. V. Detzner*, 172 So.3d 363, 391 (Fla. 2015). The Second District Court of Appeals, in *Osmulski v. Oldsmar Fine Wine, Inc.*, 93 So. 3d 389 (Fla. Dist. Ct. App. 2012) held as follows:

> [I]f a defendant has knowledge that an accident or incident has occurred on its property and that same defendant has a video camera that may have recorded the accident or incident, that defendant has a duty to obtain and preserve a copy of any relevant information recorded by that camera if a written request to do so has been made by the injured party or their representative prior to the point at which the information is lost or destroyed in the normal course of the defendant's video operations.

Spoliation of evidence results in an adverse inference against the party that negligently discarded or destroyed the evidence, and Florida courts may impose additional sanctions, including striking of the pleadings, against a party that lost, misplaced, or destroyed evidence.

See *Martino v. Wal-Mart Stores, Inc.* 835 So.2d 1251 (Fla. 4th DCA 2003) and *Public Health Trust of Dade County v. Valcin*, 507, So.2d 596, 599 (Fla. 1987).

In Florida, sanctions imposed for lost or destroyed evidence are analogous to Federal procedure. *Federal Insurance Company v. Allister Manufacturing Company,* 622 So.2d 1348 (Fla. 4th DCA 1993). Courts have the option of imposing the following remedies when evidence is lost or destroyed by a party:

1. Giving a jury instruction that an adverse inference may be drawn that the withheld evidence would be unfavorable to the party failing to produce it;

2. Shifting the burden of proof to the offending party, requiring that party to prove by the greater weight of the evidence that it was not negligent; and

3. Striking the offending party's pleadings.

Florida courts rely on the following factors to determine the appropriate remedy:

a) The willfulness or bad faith, if any, of the party responsible for the loss of the evidence;

b) The extent of prejudice suffered by the other party; and

c) What is required to cure the prejudice.

*Sponco Mfg, Inc v. Alcover,* 656 So.2d 629 (Fla. 3rd DCA 1995).

The first remedy option, a negative inference, is generally used in the less severe cases. In *Hospitality Mgmt. Company of Minnesota v. Hettiger,* 904 So.2d 547 (Fla. 4th DCA 2005), a repairman was injured on ladder provided to him by the hotel operator. The hotel disposed of the ladder on the day of the injury. The repairman sued the hotel for

negligence. The hotel argued that it had no notice that a claim was imminent, such as a letter from plaintiff advising of a claim and identifying the evidence to be preserved. The trial court gave the jury a jury instruction as to a rebuttable presumption of negligence. The Fourth District, considering the Defendant's argument that it had no notice of a potential claim and didn't receive a preservation letter, found the trial court's rebuttable presumption instruction too severe. In its place, Court instructed trial court to instruct the jury that it is permitted to make a negative inference that the missing evidence would have been unfavorable to the defendant.

The second remedy option is a burden-shifting rebuttable presumption. Under the *Valcin* Doctrine, Florida courts have adopted a rebuttable presumption of negligence upon a defendant whose negligence causes essential evidence to be lost or missing, and such absence or inadequacy hinders the plaintiff's ability to establish its prima facie case. *Public Health Trust of Dade County v. Valcin,* 507 So.2d 596 (Fla. l987); *Anesthesiolozy Critical Care & Pain Management Consultants, P.A. v. Kretzer,* 802 So.2d 346 (Fla. 4th DCA 2001). The doctrine is applicable to those cases in which either primary or secondary evidence is lost, destroyed, or not maintained. *Id.* at 349 citing *Rockwell Int'lCorp. v. Menzies,* 561 So.2d 677, 681 (Fla. 3rd DCA 1990). The purpose of a rebuttable presumption is to equalize the parties' respective positions in regard to the evidence and to allow the plaintiff to proceed when evidence within the knowledge or control of an adversary is not made available to the party which has the burden of proof. *Valcin* at 599. The *Valcin* doctrine does not require a showing malice or intent on the part of defendant, nor does it require a showing of complete destruction of plaintiff's ability to establish its prima facie case, only that such inadequacy "hinders" plaintiff's

ability to establish its prima facie case. *Valcin* at 599.

*The third available remedy is for the Court to strike an offending party's pleadings. Sanctions are more severe when a party destroys evidence after a preservation request. Lapane v. Winn-Dixie Stores, Inc.*, No. 12-36101-CA-06 (Fla. 11th Cir. Oct. 3, 2013) (striking Defendant's pleadings for destruction of video after preservation request). Even in the absence of willfulness or bad faith, a court may implement the ultimate sanction of dismissal when primary physical evidence is unavailable for the plaintiff's use and the plaintiff has demonstrated an inability to proceed without the evidence. *Rockwell International Corporation v. Menzies.* 56 1 So.2d 677 (Fla. 3rd DCA l 990) (even absent a finding of bad faith, striking defendant's pleadings where defendant lost two bolts was not only warranted but consistent with *Valcin* since *Valcin* dealt with the loss of medical records, considered to be secondary evidence).

In the instant case, Defendant knew Plaintiff was making a claim against it. It received a timely preservation letter from Plaintiff. It *responded*, stating it would preserve all relevant evidence. Consistent with *Osmulski*, Defendant had a duty, under these circumstances, to preserve the relevant video. Defendant now inexplicably claims it kept only two hours of video from that day, and preserved only the two hours following Plaintiff's departure from the premises. The video of the time frame in which Plaintiff fell would undoubtably be the most critical piece of evidence concerning Plaintiff's claims, and there is no way for Plaintiff to recreate or replicate this evidence.

Defendant has filed a Motion for Summary Judgment in this matter arguing the following:

    1) Defendant claims Plaintiff did not report the accident. The video would prove or

    disprove those facts.

2) Defendant claims its employee checked the area before Plaintiff's fall and found the area clean. The video would prove or disprove those facts.

3) The Defendant claims the substance was not on the ground for an extended period of time. The video would prove or disprove that fact.

4) The Defendant argues that Plaintiff does not know how the substance got there, or what the source of the substance was. The video would prove or disprove that the substance may have got on the ground from another customer, or from a leaky gas pump, leaking garbage can, leaking water source, or from an employee cleaning the area, or otherwise.

5) The Defendant questions that Plaintiff even fell. The video would prove or disprove that fact.

All the salient facts Plaintiff claims happened and could be provable with the video are now being used against her by Defendant vanishing the video and offering sworn affidavits by employees to contradict Plaintiff. Interestingly, in Defendant's discovery responses are witness statements filled out by two employees, Leonardo Madrid and Rita Diaz. Remember, it is a fact that Defendant knew about the incident *at the latest* On October 28, 2020. Yet the witness statements are as follows:

1) Leonardo Madrid, signed the statement on November 10, 2020 (Thirty-four days after the incident): In response to the written section asking, "Describe in detail what you observed", Mr. Madrid states, "Missing due to no claim made to club associate". Oddly enough, despite seemingly having no information, Mr.

    Madrid takes the liberty of answering "No" to the question of whether there were any physical signs of injury.

  2) Rita Diaz, signed the statement on December 10, 2020 (Sixty-five days after the incident). Ms. Diaz is the witness that Defendant claims was at the scene. Ms. Diaz states, "On October 7 at 7:00 AM I do not recall or witnessed anyone falling down in the gas station." Like Mr. Madrid, Ms. Diaz also deems herself fit to check "No" to whether there were any signs of physical injury.

(See Defendant's Witness Statements, attached as Exhibit E).

  Mr. Madrid, who was identified in Defendant's discovery as a "Walmart Manager", is not even one of the two affidavits filed by Defendant. Instead, Defendant substitutes him with another manager, Patrick Lamontagne, whose name appeared for the first time in this case when Defendant attached his affidavit to its Motion for Summary Judgment.

  Ms. Diaz, who was working at the gas station, at least, at some point on October 7, 2020, apparently decided on December 10, 2020 that she remembers that sixty-five days earlier, nobody fell at the gas station at 7:00 AM. For whatever reason, Defendant, in its investigation, only decided 43 days after receiving notice (by *Defendant's* count) that it should get a statement from the its employee who was there on the day of the accident. One can only wonder how Ms. Diaz picked precisely 7:00 AM out of all the hours of the day to say nobody fell, when, according to Defendant, Plaintiff did not report it to them. Perhaps it was a lucky guess that happened to line up precisely to the time frame Plaintiff testified she was at the gas station, from approximately 6:45 AM until 7:00 AM. But suit had not even been filed at that point, nor had Plaintiff given a deposition yet. Yet Ms. Diaz somehow comes up with 7:00 AM as the time she writes down that nobody fell. Whatever

the reason, Defendant *still* chose to only preserve and produce the video, from one camera, beginning at 7:00:10 AM, after Plaintiff departed.

The most critical piece of evidence (the one that would display precisely what happened that day) is gone after Defendant decided that only *after* the incident is the two hours of video they will preserve. What's more, Defendant does not even produce the camera footage that would have displayed the *best* view of the incident. As we see on one of Defendant's photographs of the premises, there are *additional* cameras besides the one for which they sent two hours of video. Both of these cameras face west (where Plaintiff's vehicle would have been). The video provided to Plaintiff comes from a camera facing north.The two cameras located on the side of the building (facing west), marked as Plaintiff's Exhibit F, would have provided the prime view of Plaintiff's incident and the pump she was at. Instead, Defendant produced a video from a camera pointing north in a lateral position.

Due to Defendant's spoliation of critical evidence, Plaintiff requests this Court to strike Defendant's liability defenses, and allow the case to proceed on the damages aspect only. The facts in this case scream for this type of sanction for this kind of conduct.

Alternatively, Plaintiff asks that the Court appropriately shift the burden of proof to Defendant, for the purposes of both Defendant's Motion for Summary Judgment and for trial Plaintiff also requests this Court to instruct the jury, pursuant to Florida Standard Jury Instructions 301.11(a) and 301.11(b), that an adverse inference may be drawn that the vanished evidence, after appropriate notice of the claim and a request that the video be preserved, would have been unfavorable to Defendant, and that the jury should find that Plaintiff established its liability claim against Defendant, by Defendant vanishing the

video, unless Defendant proves otherwise by the greater weight of the evidence. [1]

I HEREBY CERTIFY that a true and correct copy of the foregoing was emailed this 4th day of August 2022 to: **Frantz Destin, Jr., Esquire**, FASI & DIBELLO, P.A. 150 S.E. 2nd Ave., Suite 1010, Miami, FL 33131, 305-537-0469 (Email: hackney@fasidibellolaw.com; destin@fasidibellolaw.com; blakewindhorst@fasidibellolaw.com; lopez@fasidibellolaw.com).

Respectfully submitted,

LAW OFFICE OF WILLIAM C. RUGGIERO
Attorneys for Plaintiff
Museum Plaza, Suite 703
200 South Andrews Avenue
Fort Lauderdale, Florida  33301
Phone: (954) 462-2300
Email: Ruggiero@wcrlaw.com

BY: /s/ *William C. Ruggiero*
WILLIAM C. RUGGIERO
Florida Bar No. 878499

---

[1] Florida's Standard Jury Instruction notes that the use of 301.11(b) applies when the court has determined that there was a duty to maintain or preserve the missing evidence at issue and the party invoking the presumption has established to the satisfaction of the court that the absence of the missing evidence hinders the other party's ability to establish its claim or defense. See *Valcin*.